**HOLY SPIRIT ASSOCIATION FOR the UNIFICATION OF WORLD CHRISTIANITY and Edward O'Grady, et al., Plaintiffs,**

v.

**Jerry A. HODGE, Mayor of Amarillo, et al., Defendants.**

**Civ. A. No. CA–2–78–129.**

United States District Court, N.D. Texas, Amarillo Division.

March 8, 1984.

(Unification Church), and Edward O'Grady, a member of the Unification Church, who wish to solicit funds in Amarillo, Texas. The Plaintiffs, by this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2101–02, seek to enjoin the enforcement of the Amarillo Code of Ordinances, Article 4, Division 2, §§ 13–66 through 13–79, which regulate the licensing of solicitations. Defendants are officials responsible for the implementation and enforcement of the ordinance. The case is before the Court on Plaintiffs' Motion for Summary Judgment.

The solicitations ordinance at issue is appended to this memorandum.

### I. Propriety of Summary Judgment

■ Summary judgment is appropriate when a law is challenged as facially inconsistent with the First Amendment since "whether an ordinance is void on its face because it impinges upon constitutionally protected activities is a legal, not a factual question...." *Holy Spirit Association for the Unification of World Christianity v. Alley,* 460 F.Supp. 346, 347 (N.D.Tex. 1978). Plaintiffs have raised no challenges other than their facial ones.

### II. Standing

"The essence of the standing inquiry is whether the parties seeking to invoke the Court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination of difficult constitutional questions.'" *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978), quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This requirement of a "personal stake" must consist of "a 'distinct and palpable injury ...' to the plaintiff," *Duke Power, supra,* 438 U.S. at 72, 98 S.Ct. at 2629 quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), and "a 'fairly traceable'

Barry A. Fisher, Los Angeles, Cal., Thomas Griffith, Lubbock, Tex., for plaintiffs.

Joe Harlan, Gibson, Ochsner & Adkins, Merril Nunn, Amarillo, Tex., for defendants.

MEMORANDUM OPINION

MARY LOU ROBINSON, District Judge.

Plaintiffs are the Holy Spirit Association for the Unification of World Christianity

causal connection between the claimed injury and the challenged conduct," *Duke Power, supra,* 438 U.S. at 72, 98 S.Ct. at 2629, quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977). *See Larson v. Valente,* 456 U.S. 228, 238–39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982).

■ A personal stake in the outcome of the controversy has usually been assured in First Amendment cases by the fact that criminal proceedings have been previously instigated against the Plaintiff. *See, e.g., Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951). Here, Plaintiff O'Grady and other members of the Unification Church have been arrested, charged and convicted of violating the Amarillo ordinance on at least two occasions before this suit was filed. Thus, he has met the standing requirements of Article III. *Cf. United States v. Grace,* —— U.S. ——, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (plaintiff had standing to challenge constitutionality of statute forbidding picketing at Supreme Court building after twice being told to cease handing out leaflets on pain of arrest).

■ The Unification Church has a personal stake in the outcome of this suit because a significant portion of its members' activities consists of door-to-door and public place proselytizing and solicitation of funds, the very acts the ordinance regulates. Since as demonstrated by Plaintiff O'Grady, the Unification Church's members would otherwise have standing to sue in their own right; the solicitation regulated is germane to the church's purpose; and only declaratory and equitable relief which does not require the participation of the church's individual members in the lawsuit is sought, the Unification Church has standing. *Hunt v. Washington State Ap-*

*ple Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

Even if the Unification Church's own activities fell in an unprotected area, it would still have standing to challenge the ordinance by showing that it substantially abridges the First Amendment rights of other parties not before the Court, e.g., its members. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). As the Supreme Court explained in *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975):

> This "exception to the usual rules governing standing" reflects the transcendent value to all society of constitutionally protected expression. We give a [party] standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the "danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application."

*Id.* at 816, 95 S.Ct. at 2230 (citations omitted). Since O'Grady has met the case or controversy requirement of Article III, the Unification Church has standing under the exception.

### III. The Right to Solicit, The Right to Regulate

The Supreme Court has recently succinctly summarized these conflicting rights:

> [C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for par-

ticular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease.

*Village of Schaumburg,* 444 U.S. at 632, 100 S.Ct. at 833. The first issue before this Court is whether the City of Amarillo has exercised its power to regulate solicitation in such a manner as not unduly to intrude upon the rights of free speech. *Id.* at 633, 100 S.Ct. at 834.

### IV. Procedural Safeguards

■ Plaintiffs charge that the permit system set up by §§ 13–66 to –79 is unconstitutional because it lacks the procedural safeguards required by the Supreme Court in *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). This Court agrees.

In *Freedman* the Supreme Court held that Maryland's motion picture censorship statute unconstitutionally infringed on the First Amendment rights of exhibitors because it lacked the following procedural safeguards: (1) a requirement that the state initiate judicial action to restrain exhibition of the challenged film and bear the burden of proof in the judicial proceeding; (2) an assurance that the exhibitor will not be delayed from exhibiting the film while the state seeks protracted judicial review; and (3) a requirement that judicial review will be prompt.

While § 13–73 of the Amarillo Ordinance establishes an administrative appeal mechanism, the ordinance does not require: (1) the Solicitations Board to institute prompt judicial proceedings in which it bears the burden of justifying its refusal to issue the requested permit; (2) assurance that any interim restraint imposed pending judicial resolution on the merits will be of brief duration; and (3) a guarantee of swift, final judicial action. The lack of these safeguards in the ordinance renders the City of Amarillo's permit system constitutionally deficient. *Cf. Fernandes v. Limmer,* 663 F.2d 619, 628 (5th Cir.1981), *cert.*

*dismissed,* 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982).

### V. Discretion in the Board

Plaintiffs also allege that the permit system is unconstitutional because it vests discretion in the Solicitations Board to grant, deny or revoke permits without providing the Board with narrow and objective standards for exercising this discretion. The Supreme Court has plainly stated that "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 149, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969). The grounds on which the Board may deny a permit will be analyzed *seriatim.*

■ *§ 13–69(a).* This section authorizes the denial of a permit if "[o]ne or more of the statements made in the application are not true." It is constitutional. *Fernandes,* 663 F.2d at 629.

*§ 13–69(b).* This section authorizes denial of a permit if one of several grounds is met:

(1) The applicant or person in charge of the charitable solicitation or in the case of soliciting for subscriptions or contracts for advertisements, books, magazines or periodicals, any person connected with such soliciting has been convicted in a court of competent jurisdiction of a crime involving moral turpitude; or

(2) The applicant or such person has made or caused to be made false statements or misrepresentations to any member of the public with regard to the charitable solicitations campaign or other activities described in the permit; or

(3) The applicant or such person has made or caused to be made false statements or misrepresentations in the application or at the hearing on the application; or

■ The applicant or such person has in any way publicly represented that the permit granted is an endorsement or recommendation of the cause for which the charitable solicitations campaign or solicitations for subscriptions or contracts, for advertisements, books, magazines or periodicals is being conducted; or

■ The applicant or such person has otherwise violated any of the terms of the permit or this division.

■ The first ground is unconstitutional. *Fernandes*, 663 F.2d at 629–30. "Persons with prior criminal records are not First Amendment outcasts." *Id.*

■ The second ground is unconstitutional. *Fernandes*, 663 F.2d at 629. The Solicitations Board is given no guidance as to how such determinations are to be made. As the Fifth Circuit has said, "[t]here are other means, such as penal laws, to prevent and punish frauds without intruding on the First Amendment freedoms." *Id.*

■ The third ground is constitutional. *Fernandes*, 663 F.2d at 629. "Since gaining relevant information as to the applicant is proper, the falsification of such information is not constitutionally privileged." *Id.*

■ The fourth ground is merely a variation on the theme of the second ground and is unconstitutional for the reasons stated above.

■ The fifth ground is unconstitutional. Denying a permit for prior misconduct is impermissible, *Fernandes*, 663 F.2d at 632, "unless the government can show that the speech prohibited will 'surely result in direct, immediate, and irreparable damage.'" *Id.*, quoting *New York Times v. United States*, 403 U.S. 713, 730, 91 S.Ct. 2140, 2149, 29 L.Ed.2d 822 (1971).

■ §§ 13–69(c) & (d). These sections authorize the denial of a permit if "[t]he applicant's actual solicitations cost in any charitable solicitation campaign conducted by it during any of the three (3) years immediately preceding the date of the application where a product was not sold, exceeded fifteen percent (15%) of the gross amount collected, and in a case where a product was sold, exceeded fifteen percent (15%) of the gross amount collected less the cost of the product," or if "[t]he expected fund raising expense of the applicant in the charitable solicitations campaign which application for permit is being made will exceed fifteen percent (15%) of the gross amount collected based upon accounting data concerning prior campaigns of the applicant and such other evidence as may be adduced at the hearing," respectively.

Both (c) and (d) are unconstitutional. *Village of Schaumburg*, 444 U.S. at 636–37, 100 S.Ct. at 835–36. "[A] cost-effectiveness evaluation on the free exercise rights of religious minorities ... cannot be justified." *Fernandes*, 663 F.2d at 631.

■ § 13–69(e). This section authorizes denial of a permit if the "[a]pplicant has failed to keep or observe any promise, agreement, representation or commitment with regard to the allocation of funds or methods of fund raising or solicitation made to the solicitations board in connection with any previous application." It is plainly unconstitutional. *Fernandes*, 663 F.2d at 632; *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 833 (5th Cir.1979); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 165–66 (5th Cir.1978) (en banc), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).

■ § 13–69(f). This section authorizes denial of a permit if "[i]n the case of charitable solicitations campaign [sic] that the project is not being administered by a local responsible board of directors or committee." It is unconstitutional for two reasons. One, the terms "local" and "responsible" are unconstitutionally vague because "men of common intelligence must necessarily guess at [their] meaning." *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). Two, it impermissibly discriminates against non-Texas citizens in violation of the Privi-

leges and Immunities Clause. U.S. Const. art. IV, § 2.

■ § 13–69(i). This section authorizes denial of a permit if any "[p]aid promoters of the petitioning organization are not adequately covered by a fidelity bond." It is unconstitutional because it amounts to nothing more than the exaction of a fee for the exercise of First Amendment rights, a practice condemned by the Supreme Court. "The First Amendment's protection against governmental abridgment of free expression cannot properly be made to depend on a person's financial ability to engage in public discussion." *Buckley v. Valeo*, 424 U.S. 1, 49, 96 S.Ct. 612, 649, 46 L.Ed.2d 659 (1976). *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Jones v. City of Opelika*, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). "[F]reedom of speech [must be] available to all, not merely those who can pay their own way." *Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943) (daily licensing fee of $1.50 held to be an unconstitutional restriction on the free exercise of religious belief). *Cf. Collin v. Smith*, 578 F.2d 1197, 1207–09 (7th Cir.1978), *cert. denied*, 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978) (discussing requirement of insurance in order to obtain parade permit).

This section is also unconstitutional because the phrase "adequately covered" is unconstitutionally vague.

■ § 13–69(j). This section authorized denial of a permit if "[i]n the case of a charitable solicitation campaign that while the project is worthy it does not present a reasonably urgent need at the particular time." It is unconstitutional. One, the phrases "worthy" and "reasonably urgent" are unconstitutionally vague. Two, denial of a permit on this ground would constitute impermissible content-based regulation of free speech. A municipality may not discriminate in the regulation of expression on the basis of the content of that expression. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). A municipality may not select which issues may be discussed or debated, or which charities may solicit, on the basis of "need".

■ § 13–69(k). This section authorizes denial of a permit if "[i]n the case of a charitable solicitations campaign, the project duplicates the work of an existing governmental or non-governmental agency." It is unconstitutional. As with § 31–69(j), it constitutes impermissible content-based regulation.

■ § 13–69(l). This section authorizes denial of a permit if "[t]he project is of such a nature that it can be merged with other similar campaigns or it can be merged or processed through the annual United Way campaign." It is unconstitutional. One, as with §§ 13–69(j) & (k), it constitutes impermissible content-based regulation. Two, the phrase "of such a nature that it can be merged with other similar campaigns" is unconstitutionally vague. Three, it is an unconstitutional limitation of the mode of expression which may be used by the Plaintiffs. "The privilege of free speech carries with it freedom of choice as to the mode of expression that may be employed." 16 C.J.S. *Constitutional Law* § 213(1), at 1091 (1956). *Cf. Schneider v. New Jersey*, 308 U.S. 147, 163, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.")

■ § 13–69(m). This section authorizes denial of a permit "[i]f the appeal emanates from a national agency, the local quota exceeds the 'yardstick formula' adopted by the city's solicitation board as Amarillo's equitable share of the organiza-

tion's national goal based on indices which will be adopted by the city's solicitation board, as showing the fair share percentage for Amarillo to the national total." It is unconstitutional because it is impermissible content-based regulation. Further, "fair" and "equitable" shares are unconstitutionally vague terms in this context because the board has been given no guidelines for determining what is fair or equitable.

█ *§ 13–69(n)*. This section authorizes denial of a permit if "[t]he timing of the appeal will conflict with other existing approved drives." It is unconstitutional. While "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired ..., [a] major criterion for a valid time, place and manner restriction is that the restriction 'may not be based upon either the content or subject matter of speech.'" *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981) quoting *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). A valid time, place, and manner regulation must also "serve a significant governmental interest." *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). To the extent that "conflict" is determined by looking to the substance of an appeal, this section constitutes impermissible content-based regulation.

To the extent that "conflict" is determined by looking to factors other than content, the term is unconstitutionally vague because it fails to provide "narrow, objective, and definite standards to guide the [Solicitations Board]." *Shuttlesworth*, 394 U.S. at 151, 89 S.Ct. at 938. The Supreme Court has "consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon board criteria unrelated to proper regulation of public places." *Id.* at 153, 89 S.Ct. at 940, quoting *Kunz v. New York*, 340 U.S. 290, 293–94, 71 S.Ct. 312, 314–15, 95 L.Ed. 280 (1951).

█ *§ 13–72*. This section authorized revocation of a permit:

If, after notice and hearing, the solicitations board shall determine and make findings of fact that any permit holder or any agent or representative of a permit holder [1] is making or has made any false statements or misrepresentations to any member of the public with regard to the campaign of solicitations or other activities described in the permit, or [2] has made false statements or misrepresentations in the application or at the hearing on the application, or [3] has in any way publicly represented that the permit granted hereunder is an endorsement or recommendation of the cause for which the charitable solicitations campaign is being conducted, or [4] has violated any of the terms of the permit or [5] has otherwise violated any of the terms of this division....

The Supreme Court has recognized that an "uncontrolled power of revocation ... is but the converse of [a] system of prior licensing." *Jones v. City of Opelika*, 316 U.S. 584, 615 n. 5, 62 S.Ct. 1231, 1247 n. 5, 86 L.Ed. 1691 (1942) (Murphy, J., dissenting), *adopted per curiam as majority opinion*, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943). The grounds for revocation contained in § 13–72 are essentially the same as the grounds for denying a permit under § 13–69(b) and suffer the same constitutional infirmities. For the reasons discussed under § 13–69(b), *supra*, reasons [1], [3], [4] and [5] in § 13–72 are unconstitutional and reason [2] is constitutional.

## VI. Disclosure & Reporting

The Plaintiffs have also asserted that the reporting and disclosure requirements of the ordinance, §§ 13–68.3 and –74, are unconstitutional because of their intrusive and chilling effect on the Plaintiffs' First Amendment rights of free exercise of religion, freedom of association, and privacy.

In analyzing these claims, the Court bears in mind that "Plaintiffs' challenge to the Amarillo ordinance is entirely facial. Indeed, since Plaintiffs have exercised their prerogative not to apply for a permit before challenging the ordinance as an instrument of censorship, an issue of whether the statute [is] constitutional as applied cannot possibly arise." Plaintiffs' Memorandum in Support of Summary Judgment, at 6.

The Fifth Circuit recently considered similar challenges to a Houston solicitation ordinance and held that a municipality may require an entity such as the Unification Church "to register, identify its solicitors, and make disclosure reports concerning its solicitation of public funds without facially violating the First Amendment." *International Society for Krishna Consciousness v. City of Houston,* 689 F.2d 541, 551 (5th Cir.1982). The court went on to carefully delimit the features of the Houston ordinance which saved it from constitutional invalidity:

> There is not disclosure required except as it specifically relates to the raising of funds from the public. No membership lists are required; no names of contributors are sought; no information is asked about funds raised from members; nothing must be revealed regarding proselytizing of new members. Significantly, too, no dilemma is posed to an organization forcing it to decide whether to remain totally private or, by making public solicitations, reveal publicly all aspects of its operations. The internal operations of the organization, apart from its public solicitation, remain under the veil of privacy. All that is mandated is disclosure to the public about those funds which are solicited from the public.

*Id.* at 556. The Court finds, therefore, that, with the exception of the sections discussed below, § 13–68.3 is facially constitutional. *Compare* Amarillo Code § 13–68.3, *reprinted infra, with* Houston Code § 37–43, *reprinted in ISKCON v. Houston,* 689 F.2d at 559–60.

■ *§ 13–68.3(d).* This section requires a permit applicant to disclose "de-tailed information of the methods of handling and disbursement of all funds and a certified detailed and complete financial statement or audit of the parent organization for the last preceding fiscal year," if the receipts of the Amarillo solicitation are transmitted to a parent organization for further disbursement. It is unconstitutional. One, the phrase "detailed information" is impermissibly vague because it fails to identify precisely what information must be provided in the permit application. *Cf.* § 31–68.3(k). Two, requiring information on the "handling and disbursement of *all* funds" on its face requires the disclosure of information relating to funds and operations far beyond solicitation in Amarillo. The requirement pierces the "veil of privacy" and explores fundraising from private entities, such as members. Three, the audit requirement, just as the fidelity bond requirement in § 13–69(i), exacts a fee for the exercise of First Amendment rights. Consequently, the requirement is unconstitutional because only those who can afford an audit may obtain a permit.

■ *§ 13–68.3(i).* This section requires an applicant to state "the maximum percentage of funds collected which are to be used to pay such expenses of solicitation and collection." It is unconstitutional for the same reasons that §§ 13–69(c) & (d) are unconstitutional. This requirement of a self-imposed limit on expenses is merely another cost-effectiveness evaluation in disguise and an impermissible consideration in issuing a solicitation permit.

■ *§ 13–68.3(j).* This section requires an applicant to state "[t]he names of all officers, directors or trustees present when the decisions were made in reference to [§§ 13–68.3(h) & (i) ]." It is unconstitutional. The required information directly uncovers internal operations of the church and is not related to any legitimate governmental interest. The potential chilling effect on the exercise of the First Amendment rights of free speech, association and free exercise of religion is manifest, together with the invasion of privacy.

■ *§ 13–68.3(k).* The section requires an applicant to provide:

A detailed and complete statement of the funds (if any) collected by the applicant during the preceding year from solicitations or other activities described in section 13–68, which were the same or substantially the same as those for which the applicant is seeking a permit, such statement to show the gross amount collected, all costs of collection or solicitation, and the final distribution thereof.

It is unconstitutional because, by requiring on its face a statement of an applicant's worldwide solicitations and fund distributions, it impermissibly chills and intrudes on the First Amendment rights of free speech, association and free exercise of religion, and invades the privacy rights of the Unification Church and its members. The requirement is not reasonably related to the City of Amarillo's legitimate interest in regulating solicitation to prevent fraud in Amarillo.

■ *§ 13–68.3(o)(2).* This section requires an applicant to "give full information by separate report" with respect to any solicitors or supervisors who have been convicted of a penal offense involving moral turpitude. The phrase "full information" is unconstitutionally vague because it fails to identify precisely what information must be included in the separate report. *Cf.* Houston Code § 37–43(12), *reprinted in ISKCON v. Houston,* 689 F.2d at 560 (requiring a statement of "the nature of the offense, the State where the conviction occurred, and the year of such conviction").

■ *§ 13–68.3(o)(4).* This section requires an applicant to furnish:

A statement from the chief of the Amarillo Police Department or his representative that the applicant and the persons working under him, either in charge of soliciting or doing actual soliciting, have been fingerprinted, photographed, and according to department records and other sources, that none of such persons have been convicted of a penal offense involving moral turpitude.

The Court finds this section facially constitutional because it falls within a narrow exception to the per se invalidity of preregistration requirements in the First Amendment context. In *Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Supreme Court noted that "[a] city can ... by identification devices control the abuse of the privilege [of soliciting] by criminals posing as canvassers." *Id.* at 148, 63 S.Ct. at 865. This echoes the Court's earlier comment in *Cantwell v. Connecticut,* that "[w]ithout doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." 310 U.S. 296 at 306, 60 S.Ct. 900 at 904, 84 L.Ed. 1213 (1940). The Court later distinguished the situations in which a preregistration requirement may be imposed:

[A] requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment. Once the speaker goes further, however, and engages in conduct which amounts to more than the right of free discussion comprehends, as when he undertakes the collection of funds or securing subscriptions, he enters a realm where a *reasonable* registration or identification requirement may be imposed.

*Thomas v. Collins,* 323 U.S. 516, 540, 65 S.Ct. 315, 327, 89 L.Ed. 430 (1945) (emphasis added).

" 'Reasonableness' is, of course, a flexible term, it connotes and requires consideration of *all* relevant facts...." *Casey v. O'Bannon,* 536 F.Supp. 350, 352 (E.D.Pa. 1982). There is no hard and fast rule governing what is, or is not, reasonable. A registration or identification requirement that is reasonable under one set of facts may be unreasonable under another. Since the Plaintiffs' challenge to the ordinance's constitutionality is strictly facial, the Court

does not have before it the factual context necessary to determine the reasonableness of § 13–68.3(*o*)(4)'s registration and identification requirement. This section may be unconstitutional *as applied*, i.e., the Plaintiffs may be able to make a sufficient showing of chill and harassment, *cf. Buckley v. Valeo*, 424 U.S. 1, 72–74, 96 S.Ct. 612, 660–661, 46 L.Ed.2d 659 (1976); *NAACP v. Alabama*, 357 U.S. 449, 462, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958), but this question is not presented here.

**§ 13–74.** This section requires:

All persons or organizations issued permits ... [to] furnish to the solicitations board ... after the charitable solicitations campaign has been completed, a detailed report and financial statement showing the amount of funds raised by the charitable solicitations campaign, the amount expended in collecting such funds, including a detailed report of the wages, fees, commissions and expenses paid to any person in connection with such solicitation, and the disposition of the balance of the funds collected by the campaign .... The permit holder shall make available to the board as its representative for such purpose, all books, records and papers whereby the accuracy of the report required by this section may be investigated....

The first sentence is facially constitutional. *Cf.* Houston Code § 37–48, *reprinted in ISKCON v. Houston*, 689 F.2d at 541. The second sentence apparently grants the solicitations board broad investigative powers with regard to financial statements filed with the board. As the Supreme Court has recognized, "[e]fforts to promote disclosure of the finances of charitable organizations may also assist in preventing fraud by informing the public of the ways in which their contributions will be employed." *Village of Schaumburg*, 444 U.S. at 637–38, 100 S.Ct. at 836–37.

As an example of such an effort, the Court cited Ill.Rev.Stat. ch. 23, § 5102 (1977). Part of that statute requires charitable organizations to "maintain accurate and detailed books and records" which "shall be open to inspection at all reasonable times by the Attorney General or his duly authorized representative." *Id.* § 5102(f). This Court finds that requiring the permit holder to make available "all books, records and papers whereby the accuracy of the report ... may be investigated" is facially constitutional.

Requiring the permit holder to denominate the solicitations board "as its representative for such purpose," however, may not be. This status would enable the board to obtain information from third-party record holders such as banks without consulting the permit holder. In this case, the church would be deprived of any opportunity to assert possibly valid evidentiary privileges, *see, e.g.,* Tex.R.Evid. 505, and relevancy objections, and of the opportunity to redact any material made available such that any individual member's or contributor's financial transactions with the church would be eliminated. The resulting invasion of the church members' privacy of belief could be sufficient to make this part § 13–74 unconstitutional. As the Supreme Court has said, "the invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for '[f]inancial transactions can reveal much about a person's activities, associations, and beliefs.'" *Buckley v. Valeo*, 424 U.S. 1, 66, 96 S.Ct. 612, 657, 46 L.Ed.2d 659 (1976), quoting *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 78–79, 94 S.Ct. 1494, 1525–1526, 39 L.Ed.2d 812 (1974) (Powell, J., concurring).

Here, though, as in *California Bankers,* the Plaintiffs' challenge to the statute on First Amendment grounds is premature because the solicitations board has not sought any material under the authority of § 13–74. "This Court, in the absence of a concrete fact situation in which competing constitutional and governmental interests can

be weighed, is simply not in a position to determine whether an effort to compel disclosure of such records would or would not be barred...." *California Bankers*, 416 U.S. at 56, 94 S.Ct. at 1515. The Court, thus, does not find that § 13–74 is unconstitutional on its face.

### VII. Permit Fees

 Plaintiffs attack § 13–68 as being nothing more than the exaction of a fee for the privilege of exercising First Amendment rights. The section provides that:

No permits ... shall be issued until the required fees have been paid .... Any person, organization, society, association, corporation with a permanent residence or business address in Amarillo, Texas, seeking to conduct a charitable solicitation campaign ... shall pay a permit fee of ten dollars ($10.00). Any one else seeking to conduct a charitable solicitation campaign or anyone wishing to solicit subscriptions of contracts for advertisements, books, magazines or periodicals shall pay a permit fee of ten dollars ($10.00) for each individual engaging in such activities.

The Court must sustain Plaintiffs' facial challenge to this section. While, as discussed above, the exaction of a fee for the privilege of exercising a First Amendment right is unconstitutional, "[a] licensing fee to be used in defraying administrative costs is permissible, but only to the extent that the fees are necessary." *Fernandes*, 663 F.2d at 633 (citations omitted). This section shares the same three deficiencies that the DFW Airport ordinance at issue in *Fernandes* suffered:

(1) the ordinance imposes an exaction, moderate in amount, on the privilege of using a public forum for constitutionally protected purposes;

(2) the City of Amarillo has not demonstrated a link between the fee and the costs of the licensing process; and

(3) the ordinance conditions free exercise rights on an applicant's willingness and ability to pay.

Consequently, § 13–68 is unconstitutional on its face. (A second reason, not raised by the Plaintiffs, also compels this conclusion. The section imposes different fee requirements on Amarillo, as opposed to non-Amarillo residents, for the exercise of First Amendment rights. The use of a municipal ordinance to discriminate between municipal residents and non-municipal residents in an area of fundamental rights violates the Privileges and Immunities Clause. U.S. Const. art. IV, § 2. *See United Building and Construction Trades Council v. Mayor of Camden,* —— U.S. ——, 104 S.Ct. 1020, 1026, 79 L.Ed.2d 249 (1984). Indeed, the fee differential between city and non-city residents argues strongly that the amount of the fees is not related to the cost of processing a permit application.)

### VIII. Conclusion

For the foregoing reasons, the Court finds that the Plaintiffs' Motion for Summary Judgment should be GRANTED. The Court will enter an injunction enjoining the officials charged with enforcing the permit requirements of the Amarillo solicitations ordinance from enforcing those requirements.

It is so ORDERED.

### APPENDIX

### ARTICLE IV. SOLICITORS; STREET PEDDLERS *

### DIVISION 1. RESERVED †

Secs. 13–57—13–65. Reserved.

---

\* Cross references—Itinerant food establishments, §§ 10–42—10–46; itinerant restaurants, §§ 10–47—10–53; food peddlers, §§ 10–54—10–72.

† Editor's note—Ord. No. 4572, § 1, enacted Oct. 26, 1976, amended this Code by repealing for-

mer Div. 1, §§ 13–57—13–65, pertaining to itinerant vendor's license permits, derived from Ord. No. 296, §§ 1–3, 5, 3–14–16; Ord. No. 1197, §§ 1–4, 11–5–29; and Ord. No. 1462, §§ 1–7, 4–24–34.

DIVISION 2. SOLICITOR'S PERMIT ‡

Sec. 13–66. Amarillo Solicitations Board
—Established.

The Amarillo Solicitations Board is hereby established, composed of nine (9) members who will serve without pay and who will be appointed by the city commission. Such board is charged with the responsibility of screening all applicants for permits under this division. The initial appointments are to be for staggered terms, with three (3) members appointed for a term of one (1) year, three (3) members for a term of two (2) years, and three (3) members for a term of three (3) years; thereafter, the term will be for three (3) years for all members. United Way and Better Business Bureau, both of Amarillo, will each be permitted to recommend the name of one member to the city commission. The executive director of each of said organizations may be appointed as "ex officio" members of the board without a vote. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4314, § 1, 12–11–73)

Sec. 13–67. Same—Organization.

The board will elect a chairman and a vice-chairman from its members. The city secretary shall serve as secretary to the board. The board will adopt rules and regulations for the conduct of its business. A majority of the board will be a quorum. No application for a permit to conduct a charitable solicitations campaign on the streets and in public places in the city will either be granted or refused without due notice and hearing. No such hearing will be held unless the applicant shall have been given at least ten (10) days' notice in writing of the date, time, place and purpose of such hearing. The board shall meet regularly on the third Tuesday of each month for the conduct of its business and at such additional times as the chairman or majority of the board members shall request a special meeting. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4695, § 1(a), 10–11–77; Ord. No. 4808, § 1, 9–5–78)

‡ Editor's note—Formerly this division was derived from Ord. No. 1588, enacted August 12, 1941, as amended by Ord. No. 1740, enacted

Sec. 13–68. Permit fees.

No permit under this division shall be issued until the required fees have been paid to the city secretary of the city. Any person, organization, society, association or corporation seeking to conduct a charitable solicitation campaign as defined in section 13–68.1 shall pay a nonrefundable permit fee of ten dollars ($10.00) for the purpose of processing the application. Anyone wishing to solicit subscriptions or contracts for advertisements, books, magazines or periodicals shall pay a nonrefundable permit fee of ten dollars ($10.00) for each individual engaging in such activities. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4695, § 1(b), 10–11–77; Ord. No. 4808, § 2, 9–5–78)

Sec. 13–68.1. Permit required.

As used in this division, the term "charitable solicitations campaign" means any course of conduct, including benefit dances, barbecues, etc., whereby any person, organization, society, association, corporation or church, religious society or other religious sect, group or order, or any agent, member or representative thereof solicits property or financial assistance of any kind, or sells, or offers to sell, any article, tag, service, emblem, publication, ticket, advertisement, subscription or anything of value on a plea or representation that such sale or solicitation or the proceeds therefrom are for a charitable, educational, patriotic, philanthropic or religious purpose. It shall be unlawful to conduct any charitable solicitations campaign on the streets, in any public place, by house-to-house canvass, or by using the public streets to deliver or obtain anything of value in the city, unless the person, organization, society, association, corporation or church, religious society or other religious sect, group or order, or any agent, member or representative thereof conducting the same or responsible therefor shall have first obtained a permit in compliance with the terms of this

Sept. 21, 1948; and Ord. No. 3186, enacted July 7, 1959.

division; provided, however, that the provisions hereof shall not apply to:

(a) Any organization which solicits funds solely from its own members or from its own assemblies not using public streets nor places for such purposes;

(b) The solicitation of advertising by daily or weekly newspapers, radio, television, yellow pages and outdoor advertising. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4523, § 1, 6–1–76; Ord. No. 4695, § 1(c), 10–11–77)

Sec. 13–68.2. Permit required for soliciting subscriptions or contracts for advertisements, books, magazines or periodicals.

It shall be unlawful for any person, persons, organizations or associations, without first securing a permit from the city's solicitation board as herein provided, to solicit for subscriptions or contracts for advertisements, books, magazines or periodicals. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–68.3. Application—Required; contents.

A permit to conduct a charitable solicitations campaign or to solicit for subscriptions or contracts for advertisements, books, magazines or periodicals on the streets or in any public place or by house-to-house campaign or by using the public streets to deliver or obtain anything of value in the city will be granted only after notice of the hearing upon application for such permit filed in duplicate with the city secretary not less than ten (10) days prior to the date of the hearing. Such application shall be sworn to by the applicant and shall contain the following information:

(a) The full name of the organization applying for a permit to solicit and the address of the headquarters in the city; if the organization is a chapter or other affiliate of an organization having its principal office outside the city, the name and address of the parent organization.

(b) The names and addresses of all officers and directors or trustees of the organization and the name and city of residence of all officers, directors or trustees of the parent organization, if any.

(c) The purpose or purposes for which the gross receipts derived from such solicitations or other activities are to be used.

(d) The name of the person or persons by whom the receipts of such solicitation shall be disbursed; if the receipts are transmitted to a parent organization for further disbursement, detailed information of the methods of handling and disbursement of all funds and a certified, detailed and complete financial statement or audit of the parent organization for the last preceding fiscal year.

(e) The name and address of the person or persons who will be in charge of conducting the charitable solicitations campaign or the solicitations for advertisement in books, magazines or periodicals.

(f) An outline of the method or methods to be used in conducting the charitable solicitations campaign or the solicitation for advertisements in books, magazines or periodicals.

(g) The period within which such charitable solicitations campaign shall be conducted, including the proposed dates for the beginning and ending of such campaign.

(h) The total amount of funds proposed to be raised together with an estimate of the amount of money to be retained and used locally.

(i) The amount of all salaries, wages, fees, commissions, expenses and costs to be expended or paid to anyone in connection with such campaign, together with the manner in which such wages, fees, commissions, expenses and costs are to be expended, and the maximum percentage of funds collected which are to be used to pay such expenses of solicitation and collection.

(j) Reserved.

(k) A detailed and complete statement of the funds (if any) collected by the applicant during the preceding year from solicitations or other activities describ-

ed in section 13–68, which were the same or substantially the same as those for which the applicant is seeking a permit, such statement to show the gross amount collected, all costs of collection or solicitation, and the final distribution thereof.

(*l*) A full statement of the character and extent of the charitable, educational, patriotic or philanthropic work done by the applicant within the city during the last preceding year.

(m) If the applicant is a corporation, a copy of its charter or articles of incorporation from its state of incorporation; if the applicant is a foreign corporation, a copy of its certificate to do business in Texas.

(n) If the applicant is a charitable corporation or other organization, proof of its current status as an organization to which contributions are tax deductible for federal income tax purposes.

(*o*) The following information shall be obtained from the applicant for a permit to solicit for subscriptions or contracts, for advertisements, books, magazines or periodicals:

(1) Has any person who will either be in charge of solicitation or in charge of groups who solicit or who will do any soliciting ever been convicted of a penal offense involving moral turpitude?

(2) If "yes", give full information by separate report.

(3) If advertising is to be sold, list the name and type of publication, the rates, approximate number of pages, the amount of circulation, the page size, estimated printing costs, methods to be used in soliciting ads.

(4) A statement from the chief of the Amarillo Police Department or his representative that the applicant and the persons working under him, either in charge of soliciting or doing actual soliciting, have been fingerprinted, photographed, and according to department records and other sources, that none of such persons have been con-

victed of a penal offense involving moral turpitude. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4314, § 1(b), 12–11–73; Ord. No. 4695, § 1(d), (e), 10–11–77)

Sec. 13–69. Same—Notice of hearing.

Upon receipt of a proper application as provided in section 13–68, the secretary of the solicitations board will specify the time and place for hearing of said application, and such time for hearing shall be at least ten (10) days but not more than forty (40) days after the date on which the application is received. The secretary of the solicitations board shall notify the applicant of the time and place specified for hearing. In the absence of notice acknowledged by the applicant, the secretary of the solicitations board will give written notice to the applicant by depositing same in the United States mail in a sealed envelope with sufficient postage attached, addressed to applicant at the address shown on the application. Such mailed written notice shall be sufficient if deposited in the United States mail at least five (5) days prior to the date of the hearing. At the conclusion of the hearing on any such application, the solicitations board will authorize and direct the secretary of said board to issue the permit applied for unless the board finds from some reasonable evidence of probative value amounting to substantial evidence that:

(a) The application is not filled out in reasonable enough detail so that the board may make findings of fact on the subjects listed below within this section; or that one or more of the statements made in the application are not true.

(b) The applicant or person in charge of the charitable solicitation campaign or in the case of soliciting for subscriptions or contracts for advertisements, books, magazines or periodicals, any person connected with such soliciting has been convicted in a court of competent jurisdiction of a crime involving moral turpitude within the ten-year period immediately preceding the applica-

tion or at any time if the criminal conviction arose out of a program or campaign to solicit funds, subscriptions or contracts for advertisements, books, magazines or periodicals, or that the applicant or such person has made or caused to be made any false statement or misrepresentations to any member of the public with regard to the charitable solicitations campaign or other activities described in the permit, or has made or caused to be made false statements or misrepresentations on the application or at the hearing on the application, or has in any way publicly represented that the permit granted hereunder is an endorsement or recommendation of the cause for which the charitable solicitation campaign or solicitations for subscriptions or contracts, for advertisements, books, magazines or periodicals is being conducted, or has otherwise violated any of the terms of the permit or this division.

(c) The applicant's cost of fund raising in any campaign conducted by it in the year immediately preceding the date of the application exceeded twenty-five (25) per cent of the gross amount collected. For the purpose of this subsection "cost of fund raising" shall mean all costs including but not limited to promoter's fees and advertising expenses but excluding the cost of a product sold as a part of the campaign and excluding the cost of a dramatic, musical, educational or entertainment production presented as a part of the campaign. "Cost of product" means the cash price of the product plus freight charges. "Cost of dramatic, musical, educational or entertainment production" means speaker and/or performer expenses and building and/or space rentals.

(d) The expected cost of fund raising will exceed twenty-five (25) per cent of the gross amount collected. For purposes of this subsection, "cost of fund raising" shall be defined as in the next preceding subsection above.

(e) Applicant has failed to keep or observe any promise, agreement, representation or commitment with regard to the allocation of funds or methods of fund raising or solicitation made to the solicitations board in connection with any previous application.

(f) In the case of charitable solicitations campaign that the project is not being administered by a local responsible board of directors or committee.

(h) That children of under fourteen (14) years of age are being used to solicit for charitable purposes without being accompanied by a responsible adult or except where both of the following exist:

(1) The children are members of the organization for whose benefit the solicitation is made.

(2) All funds so solicited, less permissible costs, shall be expended solely for the direct benefit of the children locally.

(i) Paid promoters of the petitioning organization are not adequately covered by a fidelity bond.

(j) In the case of a charitable solicitation campaign that while the project is worthy it does not present a reasonably urgent need at the particular time.

(k) In case of a charitable solicitations campaign, the project duplicates the work of an existing governmental or nongovernmental agency.

($l$) The project is of such a nature that it can be merged with other similar campaigns or it can be merged or processed through the annual United Way campaign.

(m) If the appeal emanates from a national agency, the local quota exceeds the "yardstick formula" adopted by the city's solicitation board as Amarillo's equitable share of the organization's national goal based on indices which will be adopted by the city's solicitation board, as showing the fair share percentage for Amarillo to the national total.

(n) The timing of the appeal will conflict with other existing approved drives. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4314, § 1(c), (d), 12–11–73; Ord. No. 4808, § 3, 9–5–78)

### Sec. 13–70. Issuance of permit.

Upon receipt of written authorization from the solicitations board as provided in section 13–69 above or upon notification of action by the city commission of the City of Amarillo in connection with any appeal from a decision of the solicitation board as provided in section 13–69, the secretary of the solicitations board will issue a permit to conduct a charitable solicitations campaign for solicitations for subscriptions or contracts for advertisements, books, magazines or periodicals for the period and in the manner authorized by the solicitations board or the city commission. (Ord. No. 4143, § 1, 12–21–71)

### Sec. 13–70.1. Duration of permit.

The solicitations board shall determine from the application and the reasonable evidence the period during which the applicant shall be permitted to conduct its charitable solicitations campaign or solicitations for subscriptions or contracts for advertisements, books, magazines or periodicals; provided, however, that such period shall not exceed three (3) calendar months. Any extension of such period shall be granted only upon the filing of an application and after notice and hearing of the same kind and character as is required for the original permit. (Ord. No. 4143, § 1, 12–21–71)

### Sec. 13–71. Permit nontransferrable.

Any permit hereunder shall be personal to the applicant and shall not be assigned or transferred to any other person, firm, corporation or association. Any such attempted assignment or transfer shall render the permit void. However, nothing in this section shall prohibit a permittee from using the number of solicitors and representatives specified in the permit. (Ord. No. 4143, § 1, 12–21–71)

### Sec. 13–72. Revocation of permit.

If, after notice and hearing, the solicitations board shall determine and make findings of fact that any permit holder or any agent or representative of a permit holder is making or has made any false statements or misrepresentations to any member of the public with regard to the campaign of solicitations or other activities described in the permit, or has made false statements or misrepresentations in the application or at the hearing on the application, or has in any way publicly represented that the permit granted hereunder is an endorsement or recommendation of the cause for which the charitable solicitations campaign is being conducted, or has violated any of the terms of the permit or has otherwise violated the provisions of this division, then it shall be the duty of the solicitations board to revoke the permit; provided, however, that the permit holder shall be given at least twenty-four (24) hours' written notice that a hearing on the revocation is to be held, and provided, further, that such hearing on the revocation shall be conducted under the same rules as the hearing on the application. (Ord. No. 4143, § 1, 12–21–71)

### Sec. 13–73. Appeal from a ruling of solicitations board.

Every applicant shall have the right to appeal to the city commission from a ruling of the solicitations board. Such appeal, if taken, must be in writing, addressed to the city commission, and filed with the city secretary within ten (10) days after the date of the decision or ruling appealed from. The city commission shall hold an open public hearing on such appeal at either a regular or special meeting of that body after giving notice of such hearing to the applicant as provided in section 13–70 for the original hearing. (Ord. No. 4143, § 1, 12–21–71)

### Sec. 13–74. Reports to be filed.

All persons or organizations issued permits under this chapter shall furnish to the solicitations board within thirty (30) days after the charitable solicitations campaign has been completed, a detailed report and

financial statement showing the amount of funds raised by the charitable solicitations campaign, the amount expended in collecting such funds, including a detailed report of the wages, fees, commissions and expenses paid to any person in connection with such solicitation, and the disposition of the balance of the funds collected by the campaign; provided, however, that the solicitations board may extend the time for the report required by this section for an additional period of thirty (30) days upon proof that the filing of the report within the time specified will work unnecessary hardship on the permit holder. The permit holder shall make available to the board as its representative for such purpose, all books, records and papers whereby the accuracy of the report required by this section may be investigated.

All financial statements and reports and all applications submitted by any applicant or permit holder hereunder, and all determinations, findings and rulings involving accounting procedures made by either the solicitations board or the city commission shall be prepared, made and interpreted in accordance with the accounting standards and practices set out in Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations, copyright 1964, National Health Council, National Social Welfare Assembly, which is incorporated herein by reference and a copy of which shall be maintained on file in the office of the city secretary of the City of Amarillo, Texas, and in the office of the secretary of the solicitations board. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–75. Agents and solicitors for charitable permit holders.

All persons to whom permits have been issued under this division shall furnish proper credentials to their agents and solicitors for such charitable solicitations campaign. Such credentials shall include the name of the permit holder, the date, a statement describing the holder's charitable, educational, patriotic or philanthropic activity, a description of the purpose of the solicitation, the signature of the permit holder or of the holder's chief executive officer, and the name, address, age, sex, and signature of the solicitor to whom such credentials are issued and the specific period of time during which the solicitor is authorized to solicit on behalf of the permit holder. No person shall solicit under any permit granted under this division without the credentials required by this section and a facsimile copy of the permit in his possession. The credentials and facsimile copy of the permit shall be shown upon request to all persons solicited and to any police officer of the city.

No agent or solicitor shall conduct or participate in any charitable solicitations campaign for subscriptions or contracts for advertisements, books, magazines or periodicals except under a valid permit issued in compliance with this division. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–75.1. Responsibility for acts of solicitors.

The recipient of a permit for a charitable solicitations campaign for solicitations for subscriptions or contracts for advertisements, books, magazines or periodicals shall be responsible for the acts of his authorized representatives in connection with such campaign. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–76. Certain methods of soliciting prohibited.

The following methods of solicitation are and shall be prohibited within the City of Amarillo:

(a) Reserved.

(b) Solicitation by means of coins or currency boxes or receptacles, except when the use of each box or receptacle in the solicitation is expressly authorized by the board. (Ord. No. 4143, § 1, 12–21–71; Ord. No. 4325, § A, 2–5–74)

Editor's note—Ord. No. 4325 repealed former subsection (a) pertaining to telephone solicitation.

Sec. 13–77. Public inspection of records.

All applications, records of hearing, permits or rulings of either the solicitations

board or the city commission and all instruments filed in connection with any application or hearing shall be public records. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–78. Misrepresentation of information not specifically required.

It shall be unlawful for any person, firm, corporation or association, either with or without a permit, to misrepresent to the city solicitation board or any of its members in any manner any information required by this division by way of application or deemed necessary by the board to carry out the purpose of this division and not specifically covered by this division. (Ord. No. 4143, § 1, 12–21–71)

Sec. 13–79. Misrepresentation of information required by division.

It shall be unlawful for any person, firm, corporation or association, either with or without a permit, to misrepresent in any manner to any person or firm solicited, any information required by this division, including, but not limited to, the purpose of solicitation and the method of presentation. (Ord. No. 4143, § 1, 12–21–71)