**UNITED YOUTH CAREERS, INC. and LaVern Campbell, Jr., Plaintiffs,**

v.

**CITY OF AMES, IOWA, Defendant.**

No. 4:04 CV 90460.

United States District Court,
S.D. Iowa,
Central Division.

Jan. 27, 2006.

William A Wickett, Patterson Lorentzen Duffield Timmons, Des Moines, IA, for Ames, Iowa, The City of, Defendant.

Robert A Wright, Jr, Wright & Wright, Robert A Wright, Jr, Wright & Wright, Des Moines, IA, for LaVern Campbell, United Youth Careers, Inc., Plaintiffs.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court are the following motions: Plaintiffs' Motion for Partial Sum-

mary Judgment (Clerk's No. 7); Defendant's Motion for Summary Judgment (Clerk's No. 19); and Plaintiffs' Motion to Strike Portions of the Affidavit of Karen Thompson (Clerk's No. 30). A hearing was held on December 15, 2005, and the matters are fully submitted.

## I. FACTUAL BACKGROUND

On August 20, 2004, Plaintiffs filed a Petition for Declaratory Judgment, Injunctive Relief and Damages (Clerk's No. 1), alleging that Section 17.26 of the Ames, Iowa, City Municipal Code is unconstitutional on its face and as applied. Plaintiffs' Petition seeks a declaratory judgment that the ordinance is unconstitutional, injunctive relief, and damages pursuant to 42 U.S.C. § 1983. The facts in the present matter are undisputed.

United Youth Careers, Inc. ("UYC") is a non-profit Iowa corporation with its principal place of business in Des Moines, Iowa. Pls.' Statement of Undisputed Facts at 1. As stated in UYC's Articles of Incorporation, the purpose of UYC is:

1) Letting youngsters, seniors and handicapped youngsters and seniors have jobs and or counseling and training in regards to salesmanship;

2) Organizing activities and providing scholarships, bonuses, awards, and tutoring for youngsters exclusively;

3) Visitations and private counseling sessions for each individual youngster or senior educating against the use of drugs and or alcohol and geared specifically toward rehabilitation for victims of drug and or alcohol abuse;

4) Educating and religiously counseling in respect to the gospel of The Lord Jesus Christ for youngsters and seniors and encouraging church attendance.

*Id.* at 2. UYC offers its services to any and all underprivileged children and adults of Des Moines, Iowa's inner city, regardless of race or creed. *Id.* at 3. UYC provides these persons with employment training and employment based on the principles of a good work ethic, honesty, and integrity, as exemplified in the Christian faith. *Id.* Participants are rewarded for learning these principles with various activities, and children are provided with tutoring and counseling. *Id.*

UYC provides its services through donations solicited by door-to-door agents trained by UYC. *Id.* at 4. Kevin McGregor, an employee of UYC, is responsible for locating and training such persons and teaches them how to communicate information about UYC's purposes when soliciting donations. *Id.* at 5. On June 29, 2004, UYC had twenty persons soliciting donations. *Id.* at 4. Plaintiff, LaVern Campbell, Jr. ("Campbell") is an adult individual residing in Polk County, Iowa. *Id.* at 17. On June 29, 2004, he was under contract with UYC and was one of the individuals soliciting donations for UYC in Ames, Iowa. *Id.* at 18.

The City of Ames, Iowa ("Ames"), is a municipal corporation, organized and existing under the laws of the State of Iowa, in Story County. *Id.* at 6. Ames has adopted an ordinance, codified at § 17.26, which reads in pertinent part as follows:

**Sec. 17.26. PEDDLERS, SOLICITORS, AND TRANSIENT MERCHANTS.**

(3) Each and every person engaged in residence to residence solicitation of gifts or donations who is not associated with a permanent office or home in the city where someone will receive and respond to inquiries for information and identification, shall first obtain and wear, in a manner plainly visible, a registration and identification badge issued by the City Clerk.

(4) For the purpose of registration each person as aforesaid shall provide to

the City Clerk, or Clerk's designee the following:

(a) Their name, address, date of birth, social security number, height, weight, hair and eye color, and phone number, and if they do not have a permanent residence in this city, the residence and phone number where they reside permanently.

(h) If employed or working in association with a corporation, the state of its incorporation, whether it is authorized to do business in Iowa, and evidence that the corporation has designated a resident agent within 50 miles of the City upon whom legal service may be made and that the corporation will be responsible for the acts of its employees and or associates in the City; and that the corporation is covered by the insurance specified in item 14, below.

(i) A statement as to whether or not applicant has been convicted of any crime, misdemeanor, or violation of any municipal ordinance other than a traffic violation, the nature of the offense and the penalty imposed.

(j) The last municipalities, not exceeding three, where applicant has carried on activities for which registration is sought immediately preceding the date of application and the addresses from which such business was conducted in those cities.

(5) The City Clerk may refuse to register persons who fail to furnish complete or accurate information, and registration shall be invalidated if it is found that false information was provided. Registration shall be denied if the applicant has violated this ordinance, or had registration hereunder revoked or invalidated in the past six months; or if previously convicted of any crime of fraud or violence to persons or property.

(6) Each adult person shall produce a photograph-driver's license, or if they have no such license, a passport or other official photographic identification.

(7) The identification badge shall be of a distinctive logo and design to show clearly that it has been issued by the City of Ames and shall incorporate a photograph of the registrant taken at the Clerks' office or where the Clerk directs, at the time of the registration.

(9) The aforesaid registration badge shall be valid for sixty days from the date of issuance.

(10) No person shall engage in the activities described in Subsections (1) and (3) above, between the time of sunset and sunrise.

(11) Persons found to be acting in violation of this section shall be ordered by the police to cease immediately until in compliance with this section. Failure or refusal to obey such order shall be punishable as a misdemeanor.

(12) Persons obtaining the registration badge pursuant to this section shall pay such fee as the Ames City Council shall set, from time to time, to cover costs of administration and enforcement of the provisions of this section.

(13) The City Clerk may, after reasonable notice and opportunity for hearing, revoke any license issued under this division where the licensee, in the application for the license or in the course of conducting his/her business has conducted the activity for which registered· in an unlawful manner. Notice of the hearing for revocation of a license shall be given in writing, setting forth specifically the grounds of complaint, and the time and place of hearing.

(14) All applicants shall provide proof of general liability insurance including

products liability in the amount of $500,000 combined single limits. A certificate of insurance shall be delivered to the City Clerk prior to the issuance of a license. The City of Ames and its employees shall be named as additional insureds against any liabilities that may arise in connection with the licensees.

(15) Violation of this section shall be a municipal infraction punishable by a penalty of $100 for person's first violation thereof and $200 for each repeat violation. Alternatively, violation of this section can be charged by a peace office of the City as a simple misdemeanor.

Pls.' App., Exh. A, at 13. On June 29, 2004, Campbell was criminally charged with violation of the ordinance. *Id.* at 18. Neither Campbell nor UYC, ever attempted to register with the city as required by the ordinance, despite apparent knowledge by UYC of the ordinance and its terms.[1]

On August 9, 2005, Ames enacted Amendments to § 17.26. Specifically, Subsections 5, 13, and 14 were repealed and replaced with the following revised subsections:

(5) The City Clerk shall, within five days of an application for registration being submitted, either issue the registration badge or a detailed explanation of why the application is not acceptable. The City Clerk shall refuse to register persons who fail to furnish complete or accurate information, and registration shall be invalidated if it is found that false information was provided. Registration shall be denied if

the applicant has violated this ordinance, or had registration hereunder revoked or invalidated in the past six months.

(13) The City Clerk shall, after reasonable notice and opportunity for hearing, revoke any registration issued under this division where the registrant, in the application for the registration or in the course of conducting his/her activity, for which registered, has made statements constituting a fraudulent practice as defined by Subsection 714.8(6) Code of Iowa. Notice of the hearing for revocation of a registration shall be given in writing, specifically setting forth the grounds of the complaint and the time and place of the hearing.

(14) All applicants shall provide proof of general liability insurance including products liability in the amount of $500,000 combined single limits. A certificate of insurance shall be delivered to the City Clerk prior to the issuance of an identification badge. The City of Ames and its employees shall be named as additional insureds against any liabilities that may arise in connection with the registered activity.

Def.'s App. at 4.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

1. Defendant's Statement of Undisputed Facts, paragraph 13, states: "United Youth Careers, Inc. was well aware of the Defendant's Ordinance prior to June of 2004 as Kenneth McGregor had contacted the City Clerk's office [o]n various occasions in regards to potential registration and such requirements". Plaintiffs filed a reply to Defendant's Statement of Undisputed Facts, but did not deny this paragraph, thus admitting it, pursuant to Local Rule 56.1(b), which provides: "The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact."

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if the dispute over it might affect the outcome of the suit under the governing law. *Id.* The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In meeting its burden, the moving party may support his or her motion with affidavits, depositions, answers to interrogatories, and admissions. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits, depositions, answers to interrogatories, or admissions on file, designate the specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. In order to survive a motion for summary judgment, the nonmoving party must present sufficient evidence for a reasonable trier of fact to return a verdict in his or her favor. *Id.* On a motion for summary judgment, a court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *See United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir.1990) (citing *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990)). A court does not weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. A court only determines whether there are any disputed issues and,

if so, whether those issues are both genuine and material. *Id.*

In the present case, both sides have moved for summary judgment on the Plaintiff's claims. Particularly in the presence of competing cross motions for summary judgment, a court must keep in mind that summary judgment is not a paper trial. Accordingly, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In a motion for summary judgment this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *See id.* (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 and 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2712 (3d ed.1998)). The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921.

The parties are in agreement that there exists no genuine issue of material fact on the present record. Accordingly, the only question to be determined at this juncture is whether Defendant's ordinance is facially unconstitutional, as alleged by the Plaintiffs. As this question is a purely legal one, summary judgment review is particularly appropriate. *See Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634–35, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (question of law involving no dispute about the characteristics of an ordinance is properly considered on summary judgment).

### III. MOTION TO STRIKE

Defendant has offered two affidavits filed by Karen Thompson, a Deputy City Clerk in the Ames City Clerk's Office, in

support of its motion for summary judgment and in resistance to Plaintiffs' motion for summary judgment. Plaintiffs request that the Court strike paragraphs 3, 4, 5, 10, 11, and 13 of Thompson's first affidavit as irrelevant to Plaintiffs' facial attack on Defendant's ordinance. Plaintiffs also request that paragraphs 6, 7, 8, and 9 of the first affidavit be stricken as the matters contained in those paragraphs are not based on the personal knowledge of Thompson and because it is not shown that Thompson is competent to testify to the matters alleged therein. Defendant filed a resistance to Plaintiffs' motion, asserting that the first affidavit clearly establishes Thompson's personal knowledge and competence to testify as required by Federal Rule of Civil Procedure 56(e). Additionally, Defendant has filed a second affidavit by Thompson clearly stating that all information provided in both affidavits is based upon her personal knowledge. Defendant also argues that to the extent Plaintiffs claim that Thompson's testimony is irrelevant, it is not, as the facts expressed in Thompson's affidavit support Defendant's theory that it had uniformly applied practices and procedures that would defeat Plaintiffs' facial challenge to Defendant's ordinances under the reasoning set forth in *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (stating that a well established practice may, in certain circumstances, define constitutional boundaries not apparent in a statute's text).

After careful review, the Court finds that there is ample information in the affidavits to conclude that the statements therein are based upon Thompson's personal knowledge and that she is competent to testify to such matters. Likewise, the Court concludes that the information in

paragraphs 3, 4, 5, 10, 11 and 13 of Thompson's first affidavit are relevant and admissible for the purpose of supporting Defendant's arguments, discussed in further detail *infra*, that its ordinances are constitutional in light of *Lakewood*. Accordingly, Plaintiffs' Motion to Strike is denied.

## IV. MOTIONS FOR SUMMARY JUDGMENT–LAW AND ANALYSIS

The First Amendment of the United States Constitution provides in pertinent part: "Congress shall make no law ... abridging the freedom of speech ...." U.S. Const. amend. I. The United States Supreme Court has repeatedly found that charitable fund-raising involves speech fully protected by the First Amendment. *See Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796–97, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Schaumburg*, 444 U.S. at 632, 100 S.Ct. 826 ("Prior authorities ... clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests-communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes-that are within the protection of the First Amendment."). In the present case, the parties agree that two ordinances must be evaluated. Campbell was arrested under the pre-amendment ordinance and challenges it as facially unconstitutional. The City of Ames amended that ordinance, thus making any challenge of it by United Youth Careers moot. UYC, maintains, however, that the amended ordinance is still defective to the point that it remains facially unconstitutional. As both Plaintiffs are personally affected by the ordinance, both may raise a facial challenge to its terms, Campbell to both the preamendment [2] and the amended

---

**2.** Because Campbell was arrested under the provisions of the pre-amendment ordinance and is still subject to criminal liability therefor, Defendant's assertion that Campbell's

ordinance, and UYC to the amended ordinance, despite the fact that neither UYC nor Campbell have ever attempted to comply with the terms of either ordinance. *See Lakewood,* 486 U.S. at 755–56, 108 S.Ct. 2138 ("Recognizing the explicit protection accorded speech and the press in the text of the First Amendment, our cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a licence."). As to both the pre-amendment ordinance and the amended ordinance, Plaintiffs urge that each constitutes an impermissible prior restraint on protected speech, or in the alternative, an unreasonable burden on protected speech. Notably, while Plaintiffs' complaint asserts that Defendant's ordinances are unconstitutional both facially and as applied, the Plaintiffs' Motion for Partial Summary Judgment seeks only a ruling on the facial validity of the ordinances, and upon a finding that either ordinance is facially unconstitutional, an order enjoining Defendant from enforcing it.

### A. *Law on Prior Restraints and Time, Place, Manner Restrictions*

Plaintiffs first argue that both ordinances effectively act as a prior restraint on protected First Amendment speech. Plaintiffs quote *American Target Adver., Inc. v. Giani,* 199 F.3d 1241, 1250 (10th Cir.2000) for the proposition that any law barring solicitation before complying with registration requirements "definitionally qualifies as a prior restraint." Pls.' Br. at 7. Thus, Plaintiffs argue, because they are barred from soliciting donations in Ames until they comply with the requirements of the ordinance, the Ames ordinance is, by

definition, a prior restraint on protected speech and the Court should analyze it with "a heavy presumption against its constitutional validity." *Vance v. Universal Amusement Co.,* 445 U.S. 308, 317, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).

■ The term "prior restraint" is "used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (emphasis in original, citation omitted). Classic examples include "temporary restraining orders and permanent injunctions-*i.e.,* court orders that actually forbid speech activities . . . ." *Id.* Prior restraints on protected speech are particularly disfavored because "a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand." *S.E. Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

■ Defendant points out that there are reasonable arguments both for and against a determination of whether the ordinances here at issue constitute prior restraints on protected speech. Some courts, like the Tenth Circuit Court of Appeals in *American Target,* have found that a statute barring speech until the speaker complies with the provisions of the statute constitutes a prior restraint. *Amer. Target,* 199 F.3d at 1250; *see also Int'l Soc. for Krishna Consciousness of Berkeley, Inc. v. Kearnes,* 454 F.Supp. 116, 119 (E.D.Cal. 1978) ("An individual is totally restrained from solicitation if he does not have a permit . . . we conclude that the ordinances

claim with regard to that ordinance is moot is without merit.

operate as a prior restraint on the exercise of speech."). Other courts, such as the Seventh Circuit, have applied prior restraint analysis only when the challenged regulation authorizes judgment about the content of the expressive activity. *See MacDonald v. City of Chicago,* 243 F.3d 1021, 1031–32 (7th Cir.2001) (discussing in detail contradictory Supreme Court authority on the issue and discussing the Seventh Circuit's resolution of the issue by its holding in *Thomas v. Chicago Park Dist.,* 227 F.3d 921 (7th Cir.2000), which held that ordinances that concern themselves with the content of speech will be evaluated as prior restraints, while those that do not will be evaluated as time, place and manner restrictions). While the Eighth Circuit has never explicitly weighed in on the debate, it has stated that "any permit requirement gives 'public officials the power to deny use of a forum in advance of actual expression.'" *United States v. Kistner,* 68 F.3d 218, 221, n. 7 (8th Cir.1995) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 783, n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). Clearly, this language would indicate that any permit scheme is functionally a prior restraint on expressive activity and that Defendant's ordinances are, therefore, prior restraints.

■ A finding that Defendant's ordinances are prior restraints on free speech does not, however, dictate a finding that they are facially unconstitutional. Indeed, "[p]rior restraints are not unconstitutional per se." *S.E. Promotions,* 420 U.S. at 558, 95 S.Ct. 1239. Rather, there are "two evils" that will not be tolerated in such schemes. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). First, no system of prior restraint may place "'unbridled discretion in the hands of a government official or agency.'" *Id.* (quoting *Lakewood,* 486 U.S. at 757, 108 S.Ct. 2138). Second, "a prior restraint that fails to place limits on the

time within which the decisionmaker must issue the license is impermissible." *Id.* at 226, 110 S.Ct. 596.

■ Even upon a finding that an ordinance or permit scheme constitutes a prior restraint, "reasonable time, place, or manner restrictions are a recognized exception to the general prohibition against prior restraints." *Kistner,* 68 F.3d 218, 221, n. 7 (8th Cir.1995) (citing *Cmty. for Creative Non–Violence v. Turner,* 893 F.2d 1387, 1390 (D.C.Cir.1990)); *see also Consol. Edison Co. of New York, Inc. v. Pub. Serv. Comm'n of New York,* 447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); *Ward,* 491 U.S. at 791, 109 S.Ct. 2746. This is particularly true when the speech regulated is conducted in a place not generally considered a public forum: "The State has a well-recognized interest in protecting a citizen's ability to cut off unwanted communications entering the home. While unwilling listeners in a public forum may have to avoid offensive speech 'by averting their eyes' or plugging their ears, the government may intercede with narrow, carefully targeted limits on speech when it intrudes into the privacy of the home." *Nat'l Fed'n of the Blind of Arkansas, Inc. v. Pryor,* 258 F.3d 851, 856 (8th Cir.2001). Indeed, "the essence of time, place, or manner regulation lies in the recognition that various methods of speech, regardless of their content, may frustrate legitimate governmental goals," *Consol. Edison,* 447 U.S. at 536, 100 S.Ct. 2326, and therefore are subject to reasonable governmental controls.

■ To be valid restrictions on the exercise of free speech, time, place, and manner regulations must not "delegate overly broad licensing discretion to a government official," *Forsyth County v. Nationalist Movement,* 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), and must contain narrow, objective, and definite

standards to guide licensing authorities. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). This requirement is relatively indistinguishable from the "unbridled discretion" requirement under prior restraint analysis. A permit requirement controlling the time, place, and manner of speech must also be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication. *Ward*, 491 U.S. at 791, 109 S.Ct. 2746. Plaintiff concedes both that Defendant's ordinances are content-neutral and that they serve a substantial governmental interest, that is, protecting charities and the public from fraud.

In evaluating Defendant's ordinances, then, the Court is mindful that every licensing scheme is, by its very nature, a prior restraint on First Amendment expression, however, such schemes are still constitutionally valid if the restrictions imposed thereon comply with time, place, and manner restrictions and do not confer unbridled discretion on the licensing authority:

> [A] requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment. Once the speaker goes further, however, and engages in conduct which amounts to more than the right of free discussion comprehends, as when he undertakes the collection of funds or securing subscriptions, he enters a realm where a reasonable registration or identification requirement may be imposed.

*Thomas v. Collins*, 323 U.S. 516, 540, 65 S.Ct. 315, 89 L.Ed. 430 (1945). Accordingly, the Court must evaluate whether the permit schemes here at issue comprise reasonable time, place, and manner regulations, or unreasonable regulations or prior restraints. The Court evaluates Defen-

dant's ordinances with an "intermediate level of scrutiny" with regard to determining whether they are "narrowly drawn" to serve the Defendant's interest of protecting its citizenry from fraud. *See Turner Broad. Sys., Inc. v. Fed. Commc'n Comm'n*, 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994).

### B. *Plaintiffs' Challenges to Defendant's Ordinances*

1. *Lack of time restraint to issue or deny a permit.*

 Plaintiffs argue that Defendant's pre-amendment ordinance is constitutionally infirm because it does not contain a time limit within which the Ames City Clerk must issue or deny a permit. Plaintiff does not appear to dispute that Defendant's amended ordinance corrects this infirmity, requiring that: "The City Clerk shall, within five days of an application for registration being submitted, either issue the registration badge or a detailed explanation of why the application is not acceptable." Defendant concedes that the pre-amendment ordinance lacks a time frame in which the City Clerk must act to either grant or deny the permit, but urges that the lack of time constraints does not make the ordinance unconstitutional because the City Clerk's office had a long-standing practice of issuing or denying the permits within twenty-four hours of receipt of a completed application.

" 'It is settled by a long line of recent decisions of [the Supreme Court] that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official-as by requiring a permit or license which may be granted or withheld in the discretion of such official-is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' " *FW/PBS*, 493 U.S. at

225, 110 S.Ct. 596 (quoting *Shuttlesworth,* 394 U.S. at 151, 89 S.Ct. 935). "The reasoning is simple: if the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Forsyth County,* 505 U.S. at 131, 112 S.Ct. 2395. While certainly an argument could be made that the lack of time constraints in the ordinance constitutes "unbridled discretion," Plaintiffs argument of constitutional infirmity in this regard rests more soundly on the second impermissible prior restraint than in the notion of unbridled discretion.

The Supreme Court has held that "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *Id.* at 226, 110 S.Ct. 596. This is because a lack of specific time restraints on the issuance of a license, like unbridled discretion, "creates the likelihood of arbitrary denials and the concomitant suppression of speech." *FW/PBS,* 493 U.S. at 223, 110 S.Ct. 596. Clearly then, the lack of a time limit on issuance or denial of a permit in the pre-amendment ordinance is of concern as it relates to prior restraint analysis. Despite this fact, Defendant argues that the City Clerk has in actual practice over the last ten years, issued a permit upon completion of documentation within twenty-four hours, except when the registrant requested the permit be issued at a later date. Thompson Aff. ¶ 4. This is sufficient under *Lakewood,* Defendant argues, to bring its ordinance within constitutional bounds despite the lack of an articulated time limit within the text of the ordinance. The *Lakewood* Court stated: "The doctrine [of forbidding unbridled discretion or lack of time restraints] requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative

construction, or well-established practice." *Lakewood,* 486 U.S. at 770, 108 S.Ct. 2138. Defendant relies on this language to conclude that, even presuming that the lack of time limits in the statute would give rise to a finding that it is facially unconstitutional, the defect is cured by the fact that the city has a "well-established practice" of issuing permits within twenty-four hours.

Defendant offers the affidavit of Karen Thompson, the Ames Deputy City Clerk, and an individual "heavily involved in the registration process required by [the ordinances at issue]." Thompson Aff. at 1. Thompson cannot recall a time during the last ten years that a registration badge was not issued under Defendant's ordinance "within 24 hours of the application when the registrant has provided all applicable information, paid the appropriate fee, and did not request that the issuance be delayed". *Id.* at 1–2. Further, Thompson states that the amended ordinance "will not substantively alter the way in which the City Clerk's office will handle solicitation registrations, as the amendments merely codified the actual practice of the Clerk's office." *Id.* at 2. The question then, is whether the pre-amendment ordinance, clearly containing an unconstitutional prior restraint on its face by virtue of the lack of time limits for approving or denying a permit application, is cured by the fact that, in practice, the City of Ames has always issued a permit within a short time after receipt of a completed application.

According to *Lakewood,* when a "well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction, the state law is read in light of those limits. That rule applies even if the face of the statute might not otherwise suggest the limits imposed." *Lakewood,* 486 U.S. at 770, n. 11, 108 S.Ct. 2138 (citing *Poulos v. New*

*Hampshire,* 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953)). Additionally, the "Court will presume any narrowing construction or practice to which the law is 'fairly susceptible.'" *Id.* (citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)). This provision in *Lakewood* has been interpreted to require municipalities to "demonstrate a pattern of behavior from which a plausible interpretation of a law may reasonably be inferred." *Wil–Kar, Inc. v. Village of Germantown,* 153 F.Supp.2d 982, 994 (E.D.Wis.2001); *see e.g., Ward,* 491 U.S. at 795, 109 S.Ct. 2746 (ruling that a statute on sound quality, though unconstitutional by a plain textual reading, was not subject to facial challenge where city authorities had a long practice of conferring with concert sponsors on the issue and thus had "interpreted the guideline in such a manner as to provide additional guidance to the officials charged with its enforcement").

On the record now before it, the Court concludes that the Defendant has sufficiently established that its longstanding practice of making a determination on a permit application within twenty-four hours is sufficiently well understood and uniformly applied to limit the terms of the pre-amendment ordinance to within constitutional bounds. The ordinance, therefore, is fairly susceptible to being read with consideration of such a limit. Accordingly, the pre-amendment ordinance is not an unconstitutional prior restraint due to the lack of time limits on approving or denying a permit application.

2. *Lack of time limit to revoke a permit after issuance.*

■ Plaintiffs next argue that neither the pre-amendment ordinance nor the amended ordinance have time limits within which the City Clerk must act in revoking a previously issued permit. The lack of time limits on revocation in both the pre-amendment and the amended ordinance is not of substantial concern in a prior restraint analysis because no speech is chilled prior to the time that the permit is actually revoked. *See Jake's, Ltd., Inc. v. City of Coates,* 284 F.3d 884, 890 (8th Cir.2002) ("[L]icense revocation is necessarily less of a prior restraint than the initial licensing process."). American jurisprudence makes a firm distinction between prior restraints and subsequent punishments. *See Alexander,* 509 U.S. at 553–54, 113 S.Ct. 2766 ("[O]ur decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments."). Thus, if it takes two days before revocation or two years, no speech has been unduly impinged by the lack of time restraints on revoking a permit issued under the ordinance. Moreover, both versions of the ordinance specifically require the City Clerk to provide notice and opportunity for a hearing before any revocation may actually occur. Accordingly, Plaintiffs' arguments in this regard are without merit.

3. *City Clerk's authority to deny the application of a person who fails to furnish complete or accurate information or to deny the application of a person previously convicted of certain crimes.*

■ Plaintiffs contend that subsection (5) of the pre-amendment ordinance grants unbridled discretion to the City Clerk. Subsection (5) provides:

The City Clerk may refuse to register persons who fail to furnish complete or accurate information, and registration shall be invalidated if it is found that false information was provided. Registration shall be denied if the applicant has violated this ordinance, or had registration hereunder revoked or invalidated in the past six months; or if previously

convicted of any crime of fraud or violence to persons or property.

§ 17.26(5) (pre-amendment). Specifically, Plaintiffs urge that persons convicted of crimes of fraud or violence to persons or property are not "First Amendment outcasts" and that denying a permit for prior misconduct is impermissible. Plaintiffs do not appear to challenge the amended ordinance in this regard as the amended ordinance does not provide for denial of a permit on the basis of previous convictions.

Defendant concedes that the pre-amendment ordinance contained this provision, but argues that the City's practice was not to deny permits on this basis. Defendant points to the affidavit of Karen Thompson, which notes that during the last ten years, she cannot recall a time when a registration badge was not issued once all requested information and the fee was provided. Notably, Thompson's affidavit does not articulate whether any individual with previous convictions ever applied for a license in the first instance. The Court is not inclined to presume that a practice of nonenforcement of a textual provision in the ordinance exists absent any evidence that the City Clerk was ever faced with this situation and felt compelled to issue a permit anyway. Accordingly, the Court cannot find that Defendant has shown a firmly established practice that should be given the force of judicial construction under *Lakewood* and concludes that this provision of the pre-amendment ordinance was unconstitutional. *See Holy Spirit Ass'n for Unification of World Christianity v. Hodge*, 582 F.Supp. 592, 597 (N.D.Tex. 1984) (striking down a similar provision and noting that "[t]here are other means, such as penal laws, to prevent and punish frauds without intruding on the First Amendment freedoms." (quotation omitted)).

4. *City Clerk may revoke license if peddler has violated the ordinance or has made false statements in application or has solicited funds in an unlawful manner.*

Plaintiffs next object to § 17.26(13) of the pre-amendment ordinance, which provides that the City Clerk *"may*, after reasonable notice and opportunity for hearing, revoke any license issued under this division where the licensee, in the application for the license or in the course of conducting his/her business has conducted the activity for which registered in an unlawful manner." Plaintiffs claim that there is no guidance in the statute to assist the City Clerk in making such determinations, and that there are other less intrusive means to prevent fraud. Notably, this provision does not impinge on the issuance of the permit in the first place and thus, does not constitute a prior restraint within the meaning generally accorded that term. Clearly, the phrase "may," on its face, grants discretion to the City Clerk as to whether or not to enforce the provision. Karen Thompson, however, states that during the last ten years, no registration badge has ever been revoked pursuant to subsection 13. Thompson Aff. ¶ 5. As with the provision authorizing denial of a permit based on past criminal conduct, Defendant has not shown that the City was ever faced with an opportunity to exercise its discretion with regard to this provision. Thus, the Court cannot conclude that the discretion granted the City to determine what constitutes "unlawful" and to determine whether or not to revoke a license in any particular instance by virtue of the word "may," is brought within constitutional bounds due to a long history of lack of opportunity to exercise such discretion.

As to the amended ordinance, it requires, rather than permits, the City Clerk to revoke the registration of a licen-

see (after reasonable notice and opportunity for hearing) who is found to have made statements "constituting a fraudulent practice as defined by [the Iowa Code]," either in the application process or in the course of collecting solicitations. On its face, the ordinance provides clear guidelines for when a permit must be revoked, and the City Clerk is without discretion to stray from those guidelines. Moreover, revoking the permit of persons engaged in specific activities codified by the Iowa Code as fraudulent is a reasonable restriction narrowly tailored to further the goal of the City of Ames in protecting its citizenry from unlawful or fraudulent solicitors. *See Holy Spirit*, 582 F.Supp. at 597–98 (finding constitutional a provision authorizing denial of a permit based on false statements in the application). As to Plaintiffs' argument that there are less intrusive means to prevent fraud, such as after-the-fact punishment, the Supreme Court has emphasized "that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798, 109 S.Ct. 2746. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 799, 109 S.Ct. 2746. As to this provision, the amended ordinance is not broader than necessary and does not unduly impinge on a substantial amount of protected speech.

### 5. *$35.00 fee.*

▆▆ Plaintiffs object next to the requirement in both versions of the ordinance that applicants pay a $35.00 peddler's fee for a 60–day license. Subsection (12) provides that persons seeking a peddler's permit under the ordinance "shall pay such fee as the Ames City Council shall set, from time to time, to cover costs of administration and enforcement of the provisions" of the ordinance. Karen Thompson also states in her affidavit: "The $35.00 fee charged for registration under the ordinance goes towards the cost of administration and enforcement of the ordinance's provisions." Thompson Aff. at 2.

Plaintiffs cite *Holy Spirit* in support of the notion that a $35.00 fee constitutes an impermissible exaction of a fee. In *Holy Spirit*, the court found that a certain portion of a city ordinance was unconstitutional:

> This section authorizes denial of a permit if any "[p]aid promoters of the petitioning organization are not adequately covered by a fidelity bond." It is unconstitutional because it amounts to nothing more than the exaction of a fee for the exercise of First Amendment rights, a practice condemned by the Supreme Court. "The First Amendment's protection against governmental abridgment of free expression cannot properly be made to depend on a person's financial ability to engage in public discussion." *Buckley v. Valeo*, 424 U.S. 1, 49, 96 S.Ct. 612, 649, 46 L.Ed.2d 659 (1976). *See Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Jones v. City of Opelika*, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). "[F]reedom of speech [must be] available to all, not merely those who can pay their own way." *Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943) (daily licensing fee of $1.50 held to be an unconstitutional restriction on the free exercise of religious belief). *Cf. Collin*

*v. Smith,* 578 F.2d 1197, 1207–09 (7th Cir.1978), *cert. denied,* 439 U.S. 916, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978) (discussing requirement of insurance in order to obtain parade permit).

*Id.* at 599. While true that the city government may not exact a fee for the exercise of First Amendment freedoms, it is equally true that "there is nothing contrary to the Constitution in the charge of a fee limited ... to meet the expense incident to the administration of the [ordinance] and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire,* 312 U.S. 569, 576–77, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

Plaintiffs mostly seem to object to the fact that the fee charged only authorizes a permit for a period of sixty days, a limitation Plaintiffs deem illogical. Nonetheless, the ordinance on its face provides that the City Council shall set the fee for the purpose of covering "costs of administration and enforcement." Thompson's affidavit attests that the funds are actually used for that purpose. The record is devoid of evidence indicating that the fee is unreasonable or that it is not used for the purposes stated in the ordinance. The provision is, therefore, constitutional. *See Cox v. New Hampshire,* 312 U.S. at 576, 61 S.Ct. 762 (upholding license fee because it was not a fee, but a means to defray expenses incident to administration of the statute); *Murdock v. Pennsylvania,* 319 U.S. at 113–14, 63 S.Ct. 870 (striking down a fee where it was not a "nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question"); *Stonewall Union v. City of Columbus,* 931 F.2d 1130, 1136 (6th Cir. 1991) (upholding $85.00 per day fee for parade permit and noting that more than a nominal fee is constitutionally permissible so long as the fee is "reasonably related to the expenses incident to the administration of the ordinance and to the maintenance of public safety and order.").

6. *Requirement of an insurance policy.*

Plaintiffs also object to subsection (14) of Defendant's ordinance, which requires applicants for a permit to provide proof of general liability and products liability insurance in the amount of $500,000.00, combined single limits, to the Ames City Clerk and naming Ames and its employees as additional insureds for purposes of any liabilities that may arise in connection with issuance of the permit. Plaintiffs again cite *Holy Spirit* for the proposition that the requirement is nothing more than the exaction of a fee for the exercise of First Amendment rights. While Plaintiffs also assert that the requirement of insurance grants unbridled discretion to the City Clerk, the Court finds this proposition to be without merit. The guidelines imposed on the City Clerk are clear and not open to interpretation or the exercise of discretion.

The question then, is whether the requirement that "[a]ll applicants shall provide proof of general liability insurance including products liability in the amount of $500,000 combined single limits," naming the City of Ames and its employees as additional insureds, is a reasonable restriction narrowly tailored to serve the City's significant governmental interest in protecting its citizenry from fraud or other harm by solicitors. The City claims that the "$500,000 proof of insurance is the only avenue available to the City to insure that those registrants that are allowed upon its streets have the financial ability to answer to its citizens for any such fraudulent or harmful conduct brought about by the solicitations." Def.'s Br. at 12–13. Defendant cites numerous cases where proof of insurance requirements have been upheld. For example, in *Gerritsen v. City of Los Angeles,* 994 F.2d 570, 578–79 (9th Cir. 1993), potential users of a public park's bandstand and sound system were re-

quired to post a bond for liability insurance to cover damages to equipment or liability from unanticipated effects of events in the bandstand on park visitors. *Id.* The provision was upheld because it was content-neutral, because it applied to every applicant, because it furthered a significant government interest in the protection of an expensive sound system, and because it was narrowly tailored to meet that goal and left open ample opportunities for other expressive speech. *Id.* at 579. Likewise, in *Sauk County v. Gumz*, 266 Wis.2d 758, 669 N.W.2d 509 (2003), the Court upheld a bond requirement to obtain a license to use a county open-air facility to indemnify the county from costs of clean-up.

Plaintiffs argue that the cited cases are inapposite and counter that requiring a $500,000 insurance policy, which includes products liability insurance, for door-to-door solicitors is not "tailored to place the least restriction on the Plaintiffs in the exercise of their First Amendment rights." Pl.'s Reply at 10. While reiterating that time, place, and manner regulations "need not be the least restrictive or least intrusive means" of regulating expressive activity, *Ward*, 491 U.S. at 798, 109 S.Ct. 2746, the Court agrees that the insurance requirement is not sufficiently narrowly tailored to avoid burdening substantially more speech than necessary to accomplish the City's goal of protecting its citizenry from fraud. The cases cited by Defendant are contextually different from the one at issue, dealing with insurance requirements for use of public facilities and for preservation of public assets. The City offers no real argument as to how a $500,000 insurance policy will serve to protect residents of Ames from fraud or harmful conduct of door-to-door solicitors other than to say that the insurance requirement ensures that solicitors are financially able to answer to its citizenry. In the Court's view, this is akin to exacting a fee from appli-

cants prior to authorizing them to exercise their First Amendment rights. Additionally, the City does not even attempt to explain how a requirement of products liability insurance would protect the citizenry from persons merely soliciting donations for charitable purposes. The identification and screening requirement of the ordinance, as well as general criminal and civil liability measures that any harmful act may be subject to, diminish the need for the City to require such an onerous insurance policy from individuals engaged in protected speech. Accordingly, the Court finds that the insurance requirement is not sufficiently narrowly tailored to protect the interest claimed without infringing unnecessarily on protected speech. As such, it is unconstitutional.

### 7. *Lack of appeal procedure to contest conduct of the Ames City Clerk.*

Plaintiffs lastly complain that Defendant's ordinances lack sufficient avenues for judicial review of adverse actions in regard to the permit process. Indeed, neither the pre-amendment or the amended ordinance provide any method whereby an individual denied a permit, or who has had a permit revoked, may appeal that decision. Defendant argues that in cases where the "granting authority has little to no discretionary power, regulations have often been upheld as constitutional without any need for a built in appeal procedure with time limits." Def.'s Br. at 16. Thus, Defendant asserts, the fact that Iowa allows a common law certiorari proceeding based on the City Clerk's adverse decision is more than ample to satisfy constitutional requirements regarding an appeal procedure.

 The United States Supreme Court has made clear that certain procedural safeguards must be provided an applicant by a licensing scheme that impinges upon

First Amendment freedoms. In *Freedman v. State of Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the Court articulated the procedural safeguards that must be provided: The statute must provide that the licensor will, within a specific brief time period, issue the license or have the burden of going to court to restrain the protected activity; any restraint imposed in advance of a final judicial disposition on the merits be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution; and the procedure must assure a prompt final judicial decision to minimize any deterrent effect on expression protected by the First Amendment and the erroneous denial of a license. *See Freedman,* 380 U.S. at 58–59, 85 S.Ct. 734. Thus, in order for a time, place, or manner regulation to be valid, it must not only contain adequate standards to guide the officials' decision, but it must also be subject to "effective judicial review." *Thomas v. Chicago Park Dist.,* 534 U.S. 316, 323, 122 S.Ct. 775, 151 L.Ed.2d 783 (2002).

▉ The question in the context of the present proceedings, then, is whether the right to initiate a common law certiorari proceeding is constitutionally adequate absent any other right to appeal a contrary act of the City Clerk regarding a peddler's permit. Circuit Courts of Appeal have long been split on this precise issue. The Seventh Circuit Court of Appeals, for example, has held that common law certiorari is "good enough for a regulation of expressive activity when the regulation is not a form of censorship, that is, does not require or permit the regulatory authority to evaluate the content or message of the activity regulated." *Thomas v. Chicago Park Dist.,* 227 F.3d at 926; *see also Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.,* 984 F.2d 1319, 1327 (1st Cir.1993) (judicial review adequate where applicant may appeal license denial in court); *Boss Capital, Inc. v. City of Casselberry,* 187 F.3d 1251, 1255 (11th Cir. 1999) ("[F]or licensing ordinances, prompt judicial review only means access to prompt judicial review."). Other circuits, however, have interpreted prior Supreme Court jurisprudence on the issue of "effective judicial review" as requiring not just prompt access to judicial review, but a prompt determination on the merits. *See 11126 Baltimore Blvd., Inc. v. Prince George's County, Md.,* 58 F.3d 988, 1000 (4th Cir.1995) (citing *FW/PBS,* 493 U.S.at 248, 110 S.Ct. 596 and *Freedman,* 380 U.S. at 58–60, 85 S.Ct. 734, amongst others, and noting that when "read in context, it is simply not reasonable to take [Justice O'Connor's] statements that there must be 'an avenue for' or 'the possibility of' 'prompt judicial review' to mean that mere access to judicial review is sufficient to satisfy this requirement"); *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 892 (6th Cir.2000) ("[T]his Circuit and a number of other circuits have held that a licensing scheme must reasonably ensure a prompt judicial determination, and not mere access to judicial review."); *Baby Tam & Co., Inc. v. City of Las Vegas.,* 154 F.3d 1097, 1101 (9th Cir.1998) ("'prompt judicial review' means the opportunity for a prompt hearing and a prompt decision by a judicial officer"). The Supreme Court appears to have resolved this circuit split in *City of Littleton, Co. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). There, a Colorado zoning ordinance provided that denial of a license may be appealed to the state district court under the Colorado Rules of Civil Procedure. *Id.* at 774, 124 S.Ct. 2219. The Supreme Court appears to have concluded that a prompt judicial determination is required, noting that the "judicial review" safeguard is meant to prevent "'undue delay,' which includes *judicial,* as well as *administrative,* delay."

*Id.* (emphasis in original). "A delay in issuing a judicial decision, no less than a delay in obtaining access to a court, can prevent a license from being 'issued within a reasonable period of time.'" *Id.* The Court went on to find that normal Colorado law satisfies the prompt judicial determination requirement:

> Colorado's ordinary "judicial review" rules suffice to assure a prompt judicial decision, as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly. And whether the courts do so is a matter normally fit for case-by-case determination rather than a facial challenge. Four considerations support this conclusion. First, ordinary court procedural rules and practices give reviewing courts judicial tools sufficient to avoid delay-related First Amendment harm. Indeed, courts may arrange their schedules to "accelerate" proceedings, and higher courts may grant expedited review. Second, there is no reason to doubt state judges' willingness to exercise these powers wisely so as to avoid serious threats of delay-induced First Amendment harm. And federal remedies would provide an additional safety valve in the event of any such problem. Third, the typical First Amendment harm at issue here differs from that at issue in *Freedman*, diminishing the need in the typical case for procedural rules imposing special decisionmaking time limits. Unlike in *Freedman*, this ordinance does not seek to censor material. And its licensing scheme applies reasonably objective, nondiscretionary criteria unrelated to the content of the expressive materials that an adult business may sell or display. These criteria are simple enough to apply and their application simple enough to review that their use is unlikely in practice to suppress totally any specific item of adult material in the community. And the criteria's simple objective nature means that in the ordinary case, judicial review, too, should prove simple, hence expeditious. Finally, nothing in *FW/PBS* or *Freedman* requires a city or State to place judicial review safeguards [at] all in the city ordinance that sets forth a licensing scheme.

*Id.* at 774–75, 124 S.Ct. 2219.

While the Court has concerns that common law certiorari will not provide the expedient and affordable review important in the present First Amendment context, *see Graff v. City of Chicago*, 9 F.3d 1309, 1340–41 (7th Cir.1993) (Cummings, J., dissenting) ("Common law certiorari is insufficient because it is much too slow and uncertain as a mechanism for safeguarding speech. It is an unfortunate fact of life in the modem court system that it may take years, and cost a plaintiff a great deal of money, before his complaint receives a hearing on the merits."), the high Court's decision in *Z.J. Gifts* dictates a finding that the normal review procedures available under Iowa law are adequate to safeguard the First Amendment protections of solicitors, particularly where, as here, the ordinances at issue are content-neutral and there exists clear guidance to licensing authorities on when a peddler's permit may or may not issue.[3] Accordingly, the Court must conclude that common law certiorari provides an adequate constitutional safeguard and that the ordinance is not facially unconstitutional on this basis.

### C. *Injunctive Relief*

▉▉▉▉ Upon a finding that a provision of an ordinance is facially unconstitutional,

---

**3.** Naturally, the Court's reference to the ordinances containing clear guidance to issuing officials does not include those specific provisions the Court has found unconstitutional.

the Court must enjoin those provisions that are inconsistent with constitutional principles. An injunction, however, must be narrowly tailored to provide only the relief to which Plaintiffs are entitled. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 502–03, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (stating this principle in the context of a statute not invalidated on its face). To accomplish this, the Court may enjoin the enforcement of certain provisions of an ordinance if they are severable, or may enjoin the ordinance as a whole. The standard for determining the severability of an unconstitutional provision is well established: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 687, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). Ultimately, a constitutionally flawed provision cannot be severed "if the balance of the legislation is incapable of functioning independently." *Id.* at 684, 107 S.Ct. 1476. In this case, because the pre-amendment ordinance is no longer in effect, no purpose is served by injunctive relief.[4] The amended ordinance, however, is flawed with respect to the insurance requirement, a provision that clearly is severable from the remainder of the ordinance. Accordingly, the Defendant is enjoined from enforcing the insurance provision of the amended ordinance.

## V. CONCLUSION

Plaintiffs' Motion to Strike (Clerk's No. 30) is DENIED. Defendant's Motion for Summary Judgment (Clerk's No. 19) is DENIED. Plaintiffs' Partial Motion for Summary Judgment (Clerk's No. 7) is

GRANTED to the extent and for the reasoning articulated herein.

IT IS SO ORDERED.

---

4. Were the ordinance in effect, however, the Court would enjoin enforcement of the insurance provision as well as the provision permitting the City Clerk to deny a license on the basis of certain, inadequately defined past criminal acts.